John H. Lindauer, Jr., Trustee

Pro Se

✓ FILED      LODGED
__ RECEIVED  __ COPY

MAY 0 1 2017

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____B_DEPUTY

JACQUELINE S. LINDAUER TRUST

19286 North 107th Street

Scottsdale, Arizona 85255

Johnhowardlindauer@gmail.com

480-363-1807

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF ARIZONA

(PHOENIX DIVISION)

| | |
|---|---|
| John H. Lindauer, Sr., Trustee of and under ) | **CV-17-01285-PHX-MHB** |
| The JACQUELINE S. LINDAUER TRUST, ) | |
| Plaintiff ) | |
| v. ) | |
| American Heritage Lending Corporation, ) | |
| U. S. Bank National Association, Trustee for ) | |
| BNC Mortgage Loan Trust 2007-2 Mortgage ) | CASE # |
| Pass Through Certificates, Series 2007-2; ) | DECLARATORY JUDGMENT |
| Ecom Title Agency, LLC . and  Ocwen Loan ) | (28 U.S.C. 1201, 1202)) |
| Servicing, | |
| LLC  ) | |
| _____Defendants_____) | |

Plaintiff John Howard Lindauer, Jr.  pro se. as the Trustee of and under the Jacqueline S. Lindauer Trust, and alleges as follows.

1 of 7

## I. JURISDICTION AND VENUE

1.      Plaintiff is a resident of Scottsdale, Maricopa County, Arizona, and the duly appointed and acting Trustee of and under the Jacqueline S. Lindauer Trust (the Trust)

2.      Defendant American Heritage Lending Corporation (American Heritage) was, prior to its dissolution in 2008, a Delaware corporation with its principal place of business located within the state of California.

3.      Defendant U. S. Bank National Association (U.S. Bank) is a Delaware corporation with its principal place of business located within the State of Minnesota.

4.      Defendant Ecom Title Agency, LLC is a dissolved Ohio Limited Liability Company which had its principal place of business in the state of Ohio.  Prior to its dissolution in 2010 the member owners of Ecom Title Agency were residents of the state of Ohio.

5.      Defendant Ocwen Loan Servicing, LLC (Ocwen) is a Delaware Limited liability Company with its principal place of business located within the state of Florida.  Plaintiff is informed and believes and therefore alleges that the member owners of Ocwen are resident(s) in the states of Florida and/or Delaware; that no member owner of Ocwen is a resident of the state of Arizona.

6.      The amount in controversy exceeds the sum of Seventy Five Thousand Dollars ($75,000).

7.      Jurisdiction of the federal Court is raised pursuant to diversity of citizenship between Plaintiff and all Defendants as set forth in 28 U,S.C. 1332.

8.      Venue in the District of Arizona is raised pursuant to the Provisions of 28 U.S.C. 1391, as a substantial part of the events giving rise to the counts of this Complaint occurred within Maricopa County, Arizona.

## II. ALLEGATIONS COMMON TO ALL COUNTS

9.      In the year 2001 Susan Lindauer purchased a residence located at 232 Manor Circle, Takoma Park, Montgomery County, Maryland (the Susan Lindauer Residence) and paid a substantial portion of the price of said residence from the proceeds of 2 loans obtained by Susan Lindauer from Numax Mortgage, Inc. and secured to Numax Mortgage, Inc. by mortgages or Deeds of Trust recorded in the Land Records of Montgomery County, Maryland during the year 2001. (the Numax Notes and Deeds of Trust).

10. The current fair market value of the Susan Lindauer Residence is $265,000.  The principal balance of the defaulted American Heritage Note is claimed by Defendant U. S. Bank to exceed the sum of seventy five thousand dollars ($75,000).

## I. JURISDICTION AND VENUE

1.     Plaintiff is a resident of Scottsdale, Maricopa County, Arizona, and the duly appointed and acting Trustee of and under the Jacqueline S. Lindauer Trust (the Trust)

2.     Defendant American Heritage Lending Corporation (American Heritage) was, prior to its dissolution in 2008, a Delaware corporation with its principal place of business located within the state of California.

3.     Defendant U. S. Bank National Association (U.S. Bank) is a Delaware corporation with its principal place of business located within the State of Minnesota.

4.     Defendant Ecom Title Agency, LLC is a dissolved Ohio Limited Liability Company which had its principal place of business in the state of Ohio. Prior to its dissolution in 2010 the member owners of Ecom Title Agency were residents of the state of Ohio.

5.     Defendant Ocwen Loan Servicing, LLC (Ocwen) is a Delaware Limited liability Company with its principal place of business located within the state of Florida. Plaintiff is informed and believes and therefore alleges that the member owners of Ocwen are resident(s) in the states of Florida and/or Delaware; that no member owner of Ocwen is a resident of the state of Arizona.

6.     The amount in controversy exceeds the sum of Seventy Five Thousand Dollars ($75,000).

7.     Jurisdiction of the federal Court is raised pursuant to diversity of citizenship between Plaintiff and all Defendants as set forth in 28 U,S.C. 1332.

8.     Venue in the District of Arizona is raised pursuant to the Provisions of 28 U.S.C. 1391, as a substantial part of the events giving rise to the counts of this Complaint occurred within Maricopa County, Arizona.

## II. ALLEGATIONS COMMON TO ALL COUNTS

9.     In the year 2001 Susan Lindauer purchased a residence located at 232 Manor Circle, Takoma Park, Montgomery County, Maryland (the Susan Lindauer Residence) and paid a substantial portion of the price of said residence from the proceeds of 2 loans obtained by Susan Lindauer from Numax Mortgage, Inc. and secured to Numax Mortgage, Inc. by mortgages or Deeds of Trust recorded in the Land Records of Montgomery County, Maryland during the year 2001. (the Numax Notes and Deeds of Trust).

10. The current fair market value of the Susan Lindauer Residence is $265,000. The principal balance of the defaulted American Heritage Note is claimed by Defendant U. S. Bank to exceed the sum of seventy five thousand dollars ($75,000).

11.    Thereafter, in the year 2001 Susan Lindauer requested and received a loan from Plaintiff in the amount of $65,000 and on or about February 1, 2002 Susan Lindauer requested and received a loan from Plaintiff in the sum of $10,000. Each of the loans by the Trust to Susan Lindauer is evidenced by a promissory note (the Trust Notes).

12.    Each of the Trust Notes is secured by a Deed of Trust executed by Susan Lindauer (the Trust Deeds of Trust) each of which was recorded in the Land Records of Montgomery County, Maryland and constitute valid and subsisting liens upon the Susan Lindauer Residence located at 232 Manor Circle, Takoma Park, Maryland. True and correct copies of the Trust Deeds of Trust, each with the applicable recording data noted thereon, are attached hereto as Exhibits A and B to this Complaint and are incorporated herein by reference

13.    The Deeds of Trust/mortgages from Susan Lindauer to Numax Mortgage, Inc. were recorded in the Land Records of Montgomery County, Maryland at dates prior to the dates of the recordation of the Trust's Deeds of Trust.

15.    On or about January 10, 2007 Susan Lindauer applied for a loan from Defendant American Heritage which loan application was approved in the amount of Three Hundred Thousand Dollars ($300,000) by American Heritage, which immediately established a refinance loan escrow with Defendant Ecom Title Agency within the state of Ohio, for the stated purpose of utilizing the funds from said loan to refinance the residence of Susan Lindauer by payment of the Numax Notes and the $65,000 Trust Note and release of both of the Trust Deeds of Trust held by Plaintiff, thereby constituting the Deed of Trust of American Heritage as the only Deed of Trust encumbering the residence of Susan Lindauer. A true and accurate copy of the Note and of the Deed of Trust(the American Heritage Note and Deed of Trust) executed by Susan Lindauer to American Heritage as aforementioned and containing the data of their recordation in the Land Records of Montgomery Court, Maryland, are attached hereto as Exhibits C and D and are incorporated herein by reference.

16.    On or about January 15, 2007 an employee of Defendant Ecom Title (the said employee) contacted Plaintiff by phone at his home in Scottsdale, Arizona and informed Plaintiff that Susan Lindauer was in the process of refinancing her home at 232 Manor Drive Takoma Park MD and that as a part of the refinancing the liens of Numax and the Trust would be paid off and released as it was a requirement of the lender, American Heritage, that its loan to Susan Lindauer be a first lien on the Susan Lindauer residence,

17.    The said employee further informed Plaintiff that Ecom Title was a Land Title Insurer licensed by the Ohio Department of Insurance to issue title insurance and to act as an escrow agency in matters of real property purchasing and financing, and had opened an escrow at the request of lender American Heritage to process the monies and documents relating to a refinancing loan to Susan Lindauer.

18.    The said employee further stated that Plaintiff would receive by mail at his residence Scottsdale, Arizona documents satisfying and releasing the Trust's $65,000 Deed of Trust, and releasing but not satisfying the Trust's $10,000 Note (the Trust Release Documents) as there were insufficient funds from the refinancing to satisfy the $10,000 Note and,

19.      The said employee further stated that Plaintiff should sign both of the Trust Release Documents before a Notary Public and return the signed Trust Release Documents and to mail them to Ecom Title with a correspondence setting forth the payoff amount of each of the Trust's $65,000 Note as of February 15, 2007 together with the daily interest amount applicable for said Note and,

20..      The said employee further stated that when the refinancing escrow closed the Trust Release Documents would be recorded and a cashier's check in the amount of the payoff of the larger of the Trust's Notes would be sent to Plaintiff by Federal Express courier and that the Trust Release Documents would be sent to him at his Scottsdale, Arizona residence and, if there was a problem with releasing the Deed of Trust securing the $10,00 Note that Plaintiff should notify Ecom Title.

21..      Thereafter, on or about January 16, 2007 Plaintiff contacted the Ohio Department of Insurance and was informed that Ecom Title was licensed to issue title insurance policies and to conduct real property title and loan escrows within the state of Ohio.

22.      Thereafter Plaintiff decided to release the Trust Deed of Trust securing the $10,000 Note without payment of the $10,000 Note and, upon receipt of the Trust Release Documents on or about February 2, 2007, Plaintiff signed each of the Trust Release Documents before an Arizona Notary and returned them to Ecom Title together with the payoff and daily interest rate information requested by Ecom Title.

23.      On the date of the distribution of funds by American Heritage from its refinance loan to Susan Lindauer, on or about February 20, 2007, the Numax Mortgage, Inc.,(Numax) Notes and Plaintiff's Notes had the following payoff amounts necessary to cause their satisfaction:

| Name of Lender Deed of Trust/Mortgage | Amount of Original Loan | Amount to pay 0n 2-20-2007 and Release |
|---|---|---|
| Numax . | $ 157,500.00 | $153,133.10 |
| Numax | 33,000.00 | 33,133.10 |
| Trust | 65,000.00 | 105,919.00* |
| Trust | 10,000.00 | 00.00** |
| | Total | $292,18.20. |

* Annual interest at 11.5%: $7,475.00 Annually.  $17.26 per day

** Release only.  Balance at 2-20-2007 $15,774.40.  Interest 11.5%: $1,150.00 annually; $4.71 per day.

24.    On or about February 19, 2007 Defendant Ecom Title, at the specific direction of Defendant American Heritage, closed the Refinancing Escrow by recordation in the Land Records of Montgomery County, Maryland of the Note and Deed of Trust from Susan Lindauer to American Heritage   Defendant Ecom Title thereafter recorded the Trust Release Documents of Plaintiff.

25. Plaintiff is informed and believes and therefore alleges that no releases or satisfactions have been executed by Numax, nor by any assignee of Numax, regarding the Numax Notes and Deeds of Trust.

26. Plaintiff is informed and believes and therefore alleges that no monies have been paid heretofore to Numax, nor to any assignee of Numax, in payment of or upon the Numax Notes and Deeds of Trust.

27. Throughout the United States of America during the calendar year of 2007 there were two (2) universally accepted customs and usages within Escrow Industry throughout the U.S. servicing real estate loan transactions, as follows:

a-that no security interest in real property would be released and/or satisfied by the delivery to a third party, or by recordation in any Land Records, of an executed release and/or satisfaction until the escrow company had received and concurrently directed funds in an appropriate amount to the owner of the Note and security interest being satisfied and/or released and,

b-that no funds would be disbursed to a note holder to satisfy a loan secured by an interest in real property until the executed documents satisfying the Note and releasing the security interest were received by the escrow company, together with instructions to record the documents and make payment of a specific or calculable amount to the holder of the note.

28.    The aforementioned recordation of the Trust Release Documents was undertaken without the knowledge or consent of Plaintiff.

29.    Plaintiff has never received payment in whole or in part upon either of the Trust's Notes.

30.    Neither Numax or any assignee from Numax has received any payment in satisfaction of either of the Numax Notes.

31.    Plaintiff is informed and believes and therefore alleges that from on or about February 20, 2006 through the date of this Complaint, and prior to Defendant U. S. Bank acquiring the American Heritage Note and Deed of Trust, Defendants and each of them were aware that:

a.  Susan Lindauer was not in default in the making of payments due per the requirements of The American Heritage Note and Deed of Trust and,

b.  No monies had been paid upon the Numax Notes nor upon the Trust Notes and,

c.  That Ecom Title did, on or about February 20, 12007, cause the Release Documents to be recorded in the Land Records of Montgomery, Maryland without the knowledge or consent of Plaintiff and,

d.  At no time before or concurrent with the said recordings, nor thereafter prior to the filing of this Complaint, did Ecom Title or any other person or entity make any payment to or pay consideration to the J. S. Lindauer Trust in whole or partial satisfaction of the Trust's Notes and,

32.    Plaintiff is informed and believes and therefore alleges that Defendants and each of them acted knowingly, intentionally and in active concert with each other in the making of and in implementing the decisions in regard to the Susan Lindauer Escrow a.-causing the non-payment of monies to Plaintiff, b.-the non-payment of monies to Numax and c- the recording of the Trust Release Documents as hereinabove stated.

33.    Plaintiff, having learned on January 3, 2016 of the recording of the Trust Release Documents as aforementioned, did on May 6, 2016 record in the Land Records of Montgomery County , Maryland, Notices rescinding the Trust Release Documents, of the form and content specified by the then Keeper of the Land Records of Montgomery County Maryland (the Rescission Notices). True and correct copies of the Rescission Notices are attached hereto and incorporated herein by reference as Exhibits E and F.

34.    In the year 2016 the Defendant U. S. Bank stated in a pleading it filed in Maryland Circuit Court case Number 411253V that Plaintiff had no lawful interest in the Susan Lindauer Residence property and, in the year 2016 in Maryland Circuit Court cause Number 412218V U. S. Bank stated that it was the holder in due course of American Heritage Note and, further, that as the only Note Holder with a security interest in the Susan Lindauer Residential Property, the U.S. Bank holds title to said property.

35.    Plaintiff is informed and believes that RNC Mortgages, Inc. the original assignee of the American Heritage Note and Deed of Trust and wherein Defendant U. S. Bank acts as Trustee in Montgomery County, Maryland Circuit Court causes #411253V (Quiet Title of the Numax Notes and Deeds of Trust)and #412218V (Foreclosure of the Susan Lindauer residence) has heretofore sold the American Heritage Note and Deed of Trust to an unnamed party and no longer owns an interest in the Susan Lindauer Residence; that Plaintiff cannot obtain complete relief in this cause until said purchaser is joined as a party Defendant in this case.

Page 6 of 7.

Wherefore, Plaintiff prays the Court find the following to constitute present and justiciable controversies between Plaintiff and one or more of the Defendant, and resolving each of said controversies, as follows:

CONTROVERSY #1 (Plaintiff and Defendant U. S. Bank). (Disputed ownership of the American Heritage Note and Deed of Trust). Finding that RNC Mortgage, Inc. has heretofore sold and assigned its ownership of the American Heritage Note and Deed of Trust to a third party and shall forthwith disclose to the Court and to Plaintiff the date of sale and purchaser of the American Heritage Note.

CONTROVERSY #2. (Plaintiff and Defendants U.S. Bank and all Defendants ) (Plaintiff's ownership and first lien on the Susan Lindauer Residential Property). Finding that Plaintiff is the trustee of the valid and subsisting Trust Notes and Trust Deeds of Trust of the Jacqueline S Lindauer Trust is the Third and Fourth priority lienholder and that the Numax Notes and Deeds of Trust have the first and second priority liens upon the Susan Lindauer Residential Property.

CONTROVERSY #3. (Plaintiff and All Defendants.) (Holder in due course status of U.S. Bank) Finding that by reason of prior notice of default in payments due by Susan Lindauer and the unauthorized recording of the Trust Release Documents and of the non-payment of the Trust's and the Numax Notes, that U.S. Bank is not/was not a holder in due course of the American Heritage Note.

For such other relief as the Court deem just and equitable.

Dated this 1st day of May, 2017.

John Howard Lindauer, Jr.

18991  219

EXHIBIT "A"

AFTER RECORDING.
RETURN TO:
VILLAGE SETTLEMENTS, INC.
481 N. FREDERICK AVENUE, SUITE 200
GAITHERSBURG, MD 20877

Tax Id: 13-25-1065774
Title Insurer: None
VSI: [redacted]

[Space Above This Line For Recording Data]

Money Loaned
# DEED OF TRUST

01 APR 10 A 9:50.4

THIS DEED OF TRUST ("Security Instrument") is made on FEBRUARY 16, 2001                    . The grantor is

SUSAN LINDAUER

("Borrower"). The trustee is   JOAN BERLIN, OR JOHN LINDAUER, OR JOHN LINDAUER, III

("Trustee"). The beneficiary is   THE JS LINDAUER TRUST —

which is organized and existing under the laws of   Alaska
address is   .7700 NE ~~RAVENNA BOULEVARD, #417,~~ SEATTLE, WASHINGTON, 98103                    , and whose
Green Lake Blvd #B9
SIXTY-FIVE THOUSAND                    ("Lender"). Borrower owes Lender the principal sum of

Dollars (U.S. $ 65,000.00           ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for
monthly payments, with the full debt, if not paid earlier, due and payable on   MARCH 1, 2006
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals,
extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to
protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements. For this
purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property
located in                    MONTGOMERY
County, Maryland:

SEE ATTACHED SCHEDULE "A"

which has the address of     232 MANOR CIRCLE, TAKOMA PARK, MARYLAND, 20912                    [Street, City],
Maryland
                [Zip Code]                    ("Property Address");

MARYLAND-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Page 1 of 6
-6R(MD) (9105)
                VMP MORTGAGE FORMS - (313)293-8100 - (800)521-7291

IMP FD SURE $        5.00
RECORDING FEE        20.00
RECORD 9021 8/90 286.00
TOTAL  Amended 5/91  311.00
Rec4 H005      Rcpt # 54319
MOR      FS      Blk # 2012
Apr 10, 2001      09:51 am

21410   b00

JUN 2 4 2002

## MORTGAGE

$ 44.00 RECORDATION TAX PAID

$ N/A TRANSFER TAX PAID

This Mortgage, made this 28th day of May, 2002, by and between Susan Lindauer of 232 Manor Circle, Tacoma Park, in the State of Maryland, of the first part, Mortgagor, and John Lindauer, of the second part, Mortgagee:

Whereas, Mortgagor is indebted to Mortgagee in the full and just sum of Ten Thousand and 00/100 Dollars ($10,000.00).

Now this Mortgage Witnesseth, that in consideration of the premises and of the sum of $1, the said Mortgagor does grant and convey unto Mortgagee, his heirs and assigns in fee simple, all her right, title and interest in and to that parcel of ground situate located at 232 Manor Circle, Tacoma Park, Maryland, as aforesaid, and described as follows, to wit:

Legal Description:

Lot 3, Block 45, District 13, sub 025

IMP FD SURE $      5.00
RECORDING FEE     20.00
TOTAL             25.00
Re$# M008   Rcpt $ 3582
MOR    B04   Blk $ 4295
Jul 12, 2002        08:58 am

Account ID:  District 13   Account No. 1065774

Parcel ID: 13-1065774

To have and to hold the aforesaid parcel of real estate unto and to the proper use and benefit of Mortgagee, his heirs and assigns forever, together with the buildings and improvements thereupon, and the rights, alleys, ways, waters, privileges, appurtenances and advantages thereto belonging or in anywise appertaining.

Provided, that if the said Mortgagor, her executors, administrators or assigns, shall well and truly pay, or cause to be paid, the aforesaid principal sum of Ten Thousand and 00/100 Dollars ($10,000.00) and all the installments of interest thereon as evidenced by that certain Promissory Note made by Mortgagor to Mortgagee of even date herewith, when and as such

COURT (Land Records) MQR 21410, p. 0607, MSA_CE63_21364. Date available 09/15/2005. Printed 03/18/2016.

payment be due and payable as aforesaid, and shall perform each and all of the covenants herein on her part to be performed, then this mortgage shall be void.

And the said Mortgagor does hereby assent to the passage of a decree for the sale of the real estate hereby mortgaged, such sale to take place only after a default in any of the covenants or conditions of this mortgage as herein provided; and the said Mortgagor does hereby also authorize the said Mortgagee and his personal representatives, or assigns, or the duly authorized Attorney or Agent of the said Mortgagee, after any default in the covenants or conditions of this mortgage, to sell the hereby mortgaged real estate. Any such sale, whether under the above assent to a decree or under the above power of sale, shall be under the provisions of The Real Property Article of the Public General Laws of Maryland and under Subtitle W of the Maryland Rules of Procedure or under any other General or Local Law and the State of Maryland relating to mortgages, or any supplement, amendment, or addition thereto. And upon any such sale of said real estate, the proceeds shall be applied as follows: (1) to repayment of all expenses incident to said sale, including, but not limited to, reasonable attorneys fees and a commission to the party making the sale of said real estate equal to the commission allowed Trustees for making sale of real estate by virtue of a decree of a Court having equity jurisdiction in the State of Maryland; (2) to the payment of all claims of the said Mortgagee and his executors, administrators or assigns hereunder whether the same shall have matured or not; (3) and the surplus (if any there be), to the said Mortgagor and her heirs, personal representatives or assigns, or to whoever may be entitled to the same.

And it is agreed, that until default be made in the premises, the said Mortgagor and her executors, administrators or assigns, shall possess the aforesaid real estate upon paying, in the meantime, all taxes and assessments, public dues and charges levied or assessed, or to be levied or assessed, on said hereby mortgaged real estate, which taxes, mortgage debt and interest, public charges and assessments Mortgagor covenants to pay when legally due.

Parcel ID: 13-1065774

2

21410   608

And the said Mortgagor further covenants to insure, and pending the existence of this mortgage to keep insured, the improvements on the hereby mortgaged real estate to the amount of at least the replacement value of any and all improvements upon said real estate, and to cause the policy to be effected thereon to be so framed or endorsed as in case of fire, to inure to the benefit of the said Mortgagee and his executors, administrators or assigns, to the extent of his lien or claim hereunder.

The loan sum secured hereby is made for business purposes.

Witness my hand and seal.

_Susan Lindauer_

Susan Lindauer

State of Maryland      )
                       )ss
City/County of MONTGOMERY

I hereby certify that on this _28th_ day of _MAY_ in the year 2002, before me, _GEORGIA CARR_ of the State of Maryland, in and for the _County_ aforesaid, personally appeared the Mortgagor, Susan Lindauer, named in the foregoing mortgage and she acknowledged the foregoing mortgage to be her voluntary act. At the same time also appeared John Lindauer, Mortgagee, and made oath in due form of law, that the consideration set forth in said mortgage is true and bona fide as therein set forth and that the loan sum secured hereby has been paid over and disbursed by the Mortgagee unto the Mortgagor for business purposes.

Parcel ID: 13-106-5774

We hereby certify that
THIS DOCUMENT WAS
PREPARED UNDER THE
SUPERVISION OF THE
MORTGAGEE
JOHN H. LINDAUER
505 N. Lake Shore Drive
Suite 6507
Chicago, IL 60611

_Georgia Carr_
(Seal)      Georgia Carr
            NOTARY PUBLIC
       Montgomery County, Maryland
       My Commission Expires 9/01/04

JOHN LINDAUER, Mortgagee
Dorothy Dremus / dorothy dremus

3

MIN: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓        Loan Number: ▓▓▓▓▓▓▓▓▓



# ADJUSTABLE RATE BALLOON NOTE
(LIBOR Six-Month Index (As Published In *The Wall Street Journal*) - Rate Caps)

THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN YOUR INTEREST RATE AND YOUR MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT YOUR INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE YOU MUST PAY.

FEBRUARY 20, 2007            ALISO VIEJO            CALIFORNIA
[Date]                       [City]                 [State]

232 MANOR CIRCLE, TAKOMA PARK, MARYLAND 20912
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 300,000.00 (this amount is called "Principal"), plus interest, to the order of Lender. Lender is AMERICAN HERITAGE LENDING CORPORATION, A CORPORATION (CFL # 413-0549)
I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 8.300 %. The interest rate I will pay may in change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS        ** See attached Balloon Addendum To Adjustable Rate Note

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the 1st day of each month beginning on APRIL 1, 2007. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on MARCH 1, 2037 I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

MULTISTATE BALLOON ADJUSTABLE RATE NOTE
LIBOR SIX-MONTH INDEX (AS PUBLISHED IN THE WALL STREET JOURNAL)
04/01/05
Page 1 of 5

DocMagic *eForms* 800-649-1362
www.docmagic.com

SL

Usbaml.tmo

I will make my monthly payments at   65 ENTERPRISE SUITE 260, ALISO VIEJO, CALIFORNIA 92656

or at a different place if required by the Note Holder.

**(B)   Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $  2,153.76   . This amount may change.

**(C)   Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A)   Change Dates**

The interest rate I will pay may change on the   1st   day of   MARCH, 2009   , and on that day every 6th   month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B)   The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C)   Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding FIVE AND 950/1000   percentage point(s) (   5.950 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment at my new interest rate. The result of this calculation will be the new amount of my monthly payment.

**(D)   Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than   11.300 % or less than   8.300 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than ONE AND 000/1000   percentage point(s) (   1.000 %) from the rate of interest I have been paying for the preceding   6   months. My interest will never be greater than   15.300 %. My interest rate will never be less than   8.300 %.

**(E)   Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F)   Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

MULTISTATE BALLOON ADJUSTABLE RATE NOTE
LIBOR SIX-MONTH INDEX (AS *PUBLISHED IN THE WALL STREET JOURNAL*)
04/01/06                                                      Page 2 of 6

DocMagic €Ựởởṇṇ 800 649-1362
www.docmagic.com

SL

Urbard.bnc

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

(A)  Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any of my monthly payment by the end of    15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be   5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B)  Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C)  Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D)  No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E)  Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

MULTISTATE BALLOON ADJUSTABLE RATE NOTE
LIBOR SIX-MONTH INDEX (AS PUBLISHED IN THE WALL STREET JOURNAL)
04/01/06
Page 3 of 5

DocMagic *eForms* 800-649-1362
www.docmagic.com

### 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety, or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

### 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

### 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust. or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

MULTISTATE BALLOON ADJUSTABLE RATE NOTE
LIBOR SIX-MONTH INDEX (AS PUBLISHED IN THE WALL STREET JOURNAL)
04/01/05
Page 4 of 5

DocMagic eForms 800-649-1362
www.docmagic.com

𝒮L

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
SUSAN LINDAUER          -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

MULTISTATE BALLOON ADJUSTABLE RATE NOTE
LIBOR SIX-MONTH INDEX (AS PUBLISHED IN THE WALL STREET JOURNAL)
04/01/05
Page 8 of 8

DocMagic *eForms* 800-649-1362
www.docmagic.com

Loan Number: ██████████

# BALLOON ADDENDUM TO ADJUSTABLE RATE NOTE

YOUR LOAN HAS A BALLOON FEATURE. THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.

This addendum is made and is incorporated into and deemed to amend and supplement the Adjustable Rate Balloon Note of the same date.

The property covered by this addendum is described in the Security Instrument and located at:
232 MANOR CIRCLE, TAKOMA PARK, MARYLAND 20912

## AMENDED PROVISIONS

To the extent that the provisions of this Balloon Addendum to the Adjustable Rate Balloon Note ("Balloon Addendum to Note") are inconsistent with the provisions of the Security Instrument and/or the Note, the provisions of this Balloon Addendum to Note shall prevail over and shall supersede any such inconsistent provisions of the Security Instrument and/or the Note.

For value received, the receipt and sufficiency of which are hereby acknowledged, Section 4(C) of the Note is amended to read in its entirety as follows:

## 4.   ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

(C) Calculation of Changes

Payments will be amortized over a      40      year period, which is called the "Amortization Period". Before each Change Date, the Note Holder will calculate my new interest rate by adding   FIVE AND 950/1000 percentage point(s) (      5.950 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated below, this rounded amount will be my new interest rate until the next Change Date.

After any interest rate change as a result of the adjustable rate feature, the Note Holder will determine the amount of the monthly payment. The monthly payment will be in an amount sufficient to fully amortize the outstanding principal balance of the Note over the remaining term of the Amortization Period in equal monthly payments.

SL

By signing below, I (wo) accept and agree to the terms and covenants contained in this Balloon Addendum to Note.

_____  2-20-07  _____
Borrower                           Date      Borrower                              Date
SUSAN LINDAUER


_____          _____
Borrower                           Date      Borrower                              Date


_____          _____
Borrower                           Date      Borrower                              Date


BALLOON ADDENDUM TO ADJUSTABLE RATE NOTE
08/10/00                           Page 2 of 2                    DocMagic CLEARNIS 800-649-1362
                                                                  www.docmagic.com

33922· 272·

Loan Number:

# ADJUSTABLE RATE BALLOON RIDER

### (LIBOR Six-Month Index (As Published In *The Wall Street Journal*) - Rate Caps)

THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE
ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN
DUE. LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT
THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT
OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO
FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN
WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS
LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE
CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF
YOU OBTAIN REFINANCING FROM THE SAME LENDER.

THIS ADJUSTABLE RATE RIDER is made this 20th day of FEBRUARY
2007 and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to AMERICAN HERITAGE LENDING CORPORATION, A CORPORATION (CFL # 413-054 ·· (the "Lender") of the same date and covering the property described in the Security Instrument and located at

· ·· MANOR CIRCLE, TAKOMA PARK, MARYLAND 20912

[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE
INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE
AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME
AND THE MAXIMUM RATE THE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

## A. INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial interest rate of 8.300 %. The Note provides for changes in the interest rate and the monthly payments, as follows:

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES
### (A) Change Dates
The interest rate I will pay may change on the 1st day of MARCH, 2009 and on that day every 6th month thereafter. Each date on which my interest rate could change is called a "Change Date "

MULTISTATE ADJUSTABLE RATE BALLOON RIDER
LIBOR SIX-MONTH INDEX (AS PUBLISHED IN *THE WALL STREET JOURNAL*)
08/10/06                                    Page 1 of 3

DocMagic *€ÙñÛñÛ* 800-649-1362
www.docmagic.com

···· 10·19·2007  Online 03·19 2007

33922   273

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding FIVE AND 950/1000 percentage point(s) (   5.950 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment at my new interest rate. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits On Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 11.300 % or less than   8.300 %  Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than   ONE AND 000/1000 percentage point(s) (   1.000 %) from the rate of interest I have been paying for the preceding 6   months. My interest will never be greater than   15.300 %. My interest rate will never be less than   8.300 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B.   TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all

MULTISTATE ADJUSTABLE RATE BALLOON RIDER
LIBOR SIX-MONTH INDEX (AS PUBLISHED IN *THE WALL STREET JOURNAL*)
08/10/06                                    DocMagic *eForms* 800-649-1362
                    Page 2 of 3                        www.docmagic.com

Printed 10/19/2007  Online 03/19/2007

## ALLONGE

LOAN #: ▓▓▓▓▓▓▓▓

Borrower(s):   SUSAN LINDAUER

Property Address:   232 MANOR CIRCLE, TAKOMA PARK, MARYLAND 20912

Principal Balance:   $300,000.00

Loan Date:   FEBRUARY 20, 2007

PAY TO THE ORDER OF

BNC MORTGAGE, INC.

Without Recourse

Company Name: AMERICAN HERITAGE LENDING CORPORATION

By: _____   James BJAMbing   President
       (Name)                                    (Title)

Multistate Note Allonge



APPLICATION NUMBER:
BORROWERS NAME:       LINDAUER, SUSAN
BORROWERS ADDRESS:    232 MANOR CIRCLE
                      TAKOMA PARK, MD 20912

**ALLONGE TO NOTE**

PAY TO THE ORDER OF:

_____

WITHOUT RECOURSE  BNC MORTGAGE, INC.

_____
BRIAN ROSS
VICE PRESIDENT

33922  255·

Exhibit D

After Recording Return To:

AMERICAN HERITAGE LENDING CORPORATION
65 ENTERPRISE SUITE 420
ALISO VIEJO, CALIFORNIA 92656
Loan Number:

**RETURN TO:**
MISSY DOMINGUEZ
ECOM TITLE AGENCY, LLC
25111 COUNTRY CLUB BLVD. #275
N. OLMSTED, OH 44070

[Space Above This Line For Recording Data]

**MONTGOMERY COUNTY, MD**
APPROVED BY

MAR - 6 2007

$786.60 RECORDATION TAX PAID
$ N/A TRANSFER TAX PAID

# DEED OF TRUST

MIN:

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16

(A)  "Security Instrument" means this document, which is dated   FEBRUARY 20, 2007      , together with all Riders to this document.

(B)  "Borrower" is   SUSAN LINDAUER, AS SOLE OWNER

```
IMP FD SURE            28.00
RECORDING FEE          28.00
TOTAL                  48.00
Rcst MORT   Rcst # 28528
LEK   BRP   Blk # 1288
Mar 06, 2007         01:58 PM
```

Borrower is the trustor under this Security Instrument.

(C)  "Lender" is   AMERICAN HERITAGE LENDING CORPORATION

Lender is a   CORPORATION                                                    organized
and existing under the laws of   CALIFORNIA
Lender's address is   65 ENTERPRISE SUITE 420, ALISO VIEJO, CALIFORNIA 92656

(D)  "Trustee" is   UNITED TITLE COMPANY
65 ENTERPRISE SUITE 430, ALISO VIEJO, CALIFORNIA 92656

(E)  "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F)  "Note" means the promissory note signed by Borrower and dated FEBRUARY 20, 2007

2007 MAR -6 P 1:51

---

MARYLAND--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3021 1/01 (02/01/07)                     Page 1 of 15

DocMagic *eForms* 800-649-1362
www.docmagic.com

33922    25b'

The Note states that Borrower owes Lender    THREE HUNDRED THOUSAND AND 00/100

Dollars (U.S. $ 300,000.00    ) plus interest.

Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than MARCH 1, 2037.

(G)  "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H)  "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I)  "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

[X] Adjustable Rate Rider        [ ] Planned Unit Development Rider

[ ] Balloon Rider               [ ] Biweekly Payment Rider

[ ] 1-4 Family Rider            [ ] Second Home Rider

[ ] Condominium Rider          [ ] Other(s) [specify]

(J)  "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K)  "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L)  "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M)  "Escrow Items" means those items that are described in Section 3.

(N)  "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property, (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation, or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O)  "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P)  "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q)  "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R)  "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

33922  251

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust with power of sale, the following described property located in the

'OUN'TY                                              of                                    MONTGOMEF '
[Type of Recording Jurisdiction]                                                       [Name of Recording Jurisdiction]
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N.: 13-01065774

which currently has the address of                          232 MANOR CIRCLE
                                                                [Street]

TAKOMA PARK                                  , Maryland        20912          ("Property Address")
[City]                                                          [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1.  Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

MARYLAND--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3021 1/01 (02/01/07)                                          DocMagic eForms 800-649-1362
                          Page 3 of 16                              www.docmagic.com

33922   258

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2.   **Application of Payments or Proceeds.**   Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority:  (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.   **Funds for Escrow Items.**   Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for:  (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA.

33922   259

Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.  **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.  **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater

33922 260

or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.


MARYLAND--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3021 1/01 (02/01/07)                                    Page 6 of 15                                    DocMagic *Forms* 800-649-1362
                                                            19 2007 Online 03/19/2007          www.docmagic.com



33922 261

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan  Material representations include, but are not limited to representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9  **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property  then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property and securing and/or repairing the Property. Lender's actions can include, but are not limited to:  (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding  Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument  These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

It this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve  Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance  If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

33922   262

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further.

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to

MARYLAND--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3021 1/01 (02/01/07)                    Page 8 of 15       DocMagic eForms 800-649-1362
                                                    19.2007 Online 03.19/2007     www.docmagic.com

33922  263

Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to

MARYLAND--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3021 1/01 (02/01/07)                    Page 9 of 15                    DocMagic *eForms* 800-649-1362
www.docmagic.com

33922  264

Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations

MARYLAND--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3021 1/01 (02/01/07)                    Page 10 of 15              DocMagic *eFormas* 800 649 1362
                                                        03-19-2007  Online 03-19-2007        www.docmagic.com

33922   265

secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create an obligation on Lender for an Environmental Cleanup

33922    2bb.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale, assent to decree, and/or any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall mail or cause Trustee to mail a notice of sale to Borrower in the manner prescribed by Applicable Law. Trustee shall give notice of sale by public advertisement and by such other means as required by Applicable Law. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale and by notice to any other persons as required by Applicable Law. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, Trustee's fees of      5.000 % of the gross sale price and reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

Borrower, in accordance with Title 14, Chapter 200 of the Maryland Rules of Procedure, does hereby declare and assent to the passage of a decree to sell the Property in one or more parcels by the equity court having jurisdiction for the sale of the Property, and consents to the granting to any trustee appointed by the assent to decree of all the rights, powers and remedies granted to the Trustee in this Security Instrument together with any and all rights, powers and remedies granted by the decree. Neither the assent to decree nor the power of sale granted in this Section 22 shall be exhausted in the event the proceeding is dismissed before the payment in full of all sums secured by this Security Instrument.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender or Trustee, shall release this Security Instrument and mark the Note "paid" and return the Note to Borrower. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the city or county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

25. **Possession of the Property.** Borrower shall have possession of the Property until Lender has given Borrower notice of default pursuant to Section 22 of this Security Instrument.

This instrument is insured by: UNITED TITLE COMPANY

33922  267

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
SUSAN LINDAUER                        -Borrower

_____ (Seal)
                                      -Borrower

_____ (Seal)
                                      -Borrower

_____ (Seal)
                                      -Borrower

_____ (Seal)
                                      -Borrower

_____ (Seal)
                                      -Borrower

Witness:

Witness:

_____

_____

MARYLAND--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3021 1/01 (02/01/07)                Page 13 of 15        DocMagic *eForms* 800-649-1362
                                                              www.docmagic.com

33922 268

———— [Space Below This Line For Acknowledgment] ————

State of Maryland

County of  MONTGOMERY

On this  20  day of  February  2007 , before me, the undersigned officer

personally appeared  SUSAN LINDAUER  only

known to me (or satisfactorily proven) to be the person(s) whose name(s) is/are subscribed to the within instrument

and acknowledged that he/she/they executed the same for the purpose therein contained.

In witness hereof I hereunto set my hand and official seal.

_____
Signature

_____
VICTORIA J HARRISON
Typewritten or Printed Name of Notary Public

Notary Public
My Commission expires:  4-11-2007

(Seal)



VICTORIA J. HARRISON
Notary Public
Montgomery Co., MD
My Comm. Exps. April 11, 2007

MARYLAND--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS    DocMagic eForms 800-649 1362
Form 3021 1/01 (02/01/07)    Page 14 of 15    03 19 2007 Online 03/19/2007    www.docmagic.com

33922  269

State of ~~MARYLAND~~ California

County of ~~MONTGOMERY~~ Orange

On this 22nd day of February 2007, before me, the undersigned officer

personally appeared ~~SUSAN FENDAUER~~ James R. Sawasky

the agent(s) of the person(s) secured by the foregoing deed of trust and made oath in due form of law that the consideration recited in said deed of trust is true and bona fide as therein set forth; if this is a purchase money loan transaction, that the actual sum of money advanced at the closing transaction by the secured party(ies) was paid over and disbursed by the party(ies) secured by the deed of trust to either the borrower(s) or the person(s) responsible for disbursement of funds in the closing transaction or his/her/their respective agent at a time no later than the execution and delivery of the deed of trust by the borrower; and that he/she/they is/are the agent(s) of the person(s) secured by the deed of trust and is duly authorized to make this affidavit.

In witness hereof I hereunto set my hand and official seal.

NICOLE S. KELLY
COMM #1669118
NOTARY PUBLIC • CALIFORNIA
ORANGE COUNTY
Comm. Exp. MAY 22, 2010

(Seal)

Signature

Nicole S. Kelly
Typewritten or Printed Name of Notary Public

Notary Public
My Commission expires: May 22, 2010

CERTIFICATION: This is to certify that this deed of trust:

| was prepared by or under the supervision of _____
_____ , an attorney licensed to practice law in the state of Maryland

[X] was prepared by AMERICAN HERITAGE LENDING
_____ , one of the parties to the instrument

Signature        2/22/07        James R. Sawasky
                 Date           Typewritten or Printed Name

Its: President

33922  270

PRIVATE ABSTRACTORSFAX Fax:4108768149        Jan 18 2007 04:15pm  P017/02'

18991   225

Schedule "A"

Lot numbered Three (3) In Block numbered Forty-five (45) In the subdivision known as "Carroll Manor Addition to Takoma Park", as per plat thereof duly recorded among the Land Records of Montgomery County, Maryland In Plat Book 3 at Plat No. 219.

MONTGOMERY COUNTY CIRCUIT COURT (Land Records) [MSA CE 83-10945] Book MCR 18991, p. 0225, Printed 01/18/2007 Online 06/20/2006

Printed 10-19 2007  Online 03/19/2007

33922  274

sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)          _____ (Seal)
SUSAN LINDAUER                 -Borrower                                         -Borrower

_____ (Seal)          _____ (Seal)
                               -Borrower                                         -Borrower

_____ (Seal)          _____ (Seal)
                               -Borrower                                         -Borrower

MULTISTATE ADJUSTABLE RATE BALLOON RIDER
LIBOR SIX-MONTH INDEX (AS PUBLISHED IN *THE WALL STREET JOURNAL*)
08/10/06                                    Page 3 of 3

*DocMagic* €ℱℴ℘ℳℴ 800-649-1362
www.docmagic.com

33922   275

**State of Maryland Land Instrument Intake Sheet**
☐ Baltimore City   ☐ County _____

*Information provided is for the use of the Clerk's Office, State Department of Assessments and Taxation, and County Finance Office Only.*
(Type or Print in Black Ink Only—All Copies Must Be Legible)

**[1] Type(s) of Instruments**

| Deed | Mortgage | Other _____ | Other _____ |
| Deed of Trust | Lease | | |

**[2] Conveyance Type Check Box**

| Improved Sale Arms-Length (1) | Unimproved Sale Arms-Length (2) | Multiple Accounts Arms-Length (3) | Not an Arms-Length Sale (9) |

**[3] Tax Exemptions (if applicable) Cite or Explain Authority**

| Recordation | |
| State Transfer | |
| County Transfer | |

**[4] Consideration and Tax Calculations**

| Consideration Amount | | Finance Office Use Only Transfer and Recordation Tax Consideration |
|---|---|---|
| Purchase Price/Consideration | $ | |
| Any New Mortgage | $ 300,000 00 | Transfer Tax Consideration $ |
| Balance of Existing Mortgage | $ 153,133 10 | Less Exemption Amount $ |
| Other | $ 33,118 16 | Total Transfer Tax $ |
| Other | $ | Recordation Tax Consideration |
| Full Cash Value | $ 114,185 74 | X $ per $500 $ |
| | | TOTAL DUE $ |

**[5] Amount of Fees**

| | | Doc. 1 | Doc. 2 | Agent |
|---|---|---|---|---|
| Recording Charge | $ | | $ | |
| Surcharge | $ | | $ | Tax Bill |
| State Recordation Tax | $ | | $ | |
| State Transfer Tax | $ | | $ | C.B. Credit |
| County Transfer Tax | $ | | $ | |
| Other | $ | | $ | Ag Tax/Other |
| Other | $ | | $ | |

**[6] Description of Property**
SDAT requires submission of all applicable information. A maximum of 40 characters will be indexed in accordance with the priority cited in Real Property Article Section 3-104(g)(3)(i)

| District | Property/Tax ID No. (1) | Grantor Liber/Folio | Map | Parcel No. | Var. LOG |
|---|---|---|---|---|---|
| | 13-01065774 | | | 13-01065774 | (5) |
| | Subdivision Name | Lot (3a) | Block (3b) | Sect/AR (3c) | Plat Ref. | SqFt/Acreage (4) |

Location/Address of Property Being Conveyed (2)
232 MANOR CIRCLE TAKOMA PARK, MD 20912

Other Property Identifiers (if applicable) | Water Meter Account No.

Residential ✓ or Non-Residential ☐   Fee Simple ✓ or Ground Rent ☐   Amount:
Partial Conveyance? ☐ Yes ✓ No   Description/Amt of SqFt/Acreage Transferred
If Partial Conveyance, List Improvements Conveyed

**[7] Transferred From**

| Doc. 1 – Grantor(s) Name(s) | Doc. 2 – Grantor(s) Name(s) |
|---|---|
| SUSAN LINDAUER | |
| Doc. 1 – Owner(s) of Record, If Different from Grantor(s) | Doc. 2 – Owner(s) of Record, If Different from Grantor(s) |

**[8] Transferred To**

| Doc. 1 – Grantee(s) Name(s) | Doc. 2 – Grantee(s) Name(s) |
|---|---|
| AMERICAN HERITAGE LENDING CORPORATION | |

New Owner's (Grantee) Mailing Address

**[9] Other Names to Be Indexed**

| Doc. 1 Additional Names to be Indexed (Optional) | Doc. 2 Additional Names to be Indexed (Optional) |

**[10] Contact/Mail Information**

Instrument Submitted By or Contact Person

Name: MISSY DOMINGUEZ
Firm: ECOM TITLE AGENCY, LLC
Address: 26111 COUNTRY CLUB BLVD. #275
N. OLMSTED, OH 44070

☐ Return to Contact Person
☐ Hold for Pickup
✓ Return Address Provided

**[11] IMPORTANT:** *BOTH THE ORIGINAL DEED AND A PHOTOCOPY MUST ACCOMPANY EACH TRANSFER*

**Assessment Information**

✓ Yes ☐ No   Will the property being conveyed be the grantee's principal residence?
☐ Yes ✓ No   Does transfer include personal property? If yes, identify
☐ Yes ✓ No   Was property surveyed? If yes, attach copy of survey (if recorded, no copy required)

Assessment Use Only – Do Not Write Below This Line

| Terminal Verification | Agricultural Verification | Whole | Part | Tran Process Verification |
|---|---|---|---|---|
| Transfer Number | Date Received | Geo | Map | Assigned Property No |
| Year 20 | 20 | Zoning | Grid | Sub | Block |
| Land | | Use | Parcel | Plat | Lot |
| Buildings | | Town Cd. | Ex. St. | Section | Occ. Cd. |
| Total | | | | Ex. Cd. | |
| REMARKS | | | | | |

Distribution: White – Clerk's Office   Canary – SDAT
Pink – Office of Finance   Goldenrod – Preparer
AOC-CL-2(9/(95))

## IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

Laura H.G. O'Sullivan, et al.,
Substitute Trustees
    Plaintiffs

                      Civil No.

      vs.

Susan Lindauer
232 Manor Circle
Takoma Park, Maryland 20912
    Defendant

## TRUE COPY AFFIDAVIT REGARDING ASSIGNMENT OF DEED OF TRUST OR MORTGAGE

The undersigned does hereby certify that Lauren Bush, Esq. . is the attorney for the holder of the Note secured by the Deed of Trust/Mortgage recorded among the land records of MONTGOMERY COUNTY, Maryland, in Liber 33922 at folio 255, and that the attached Assignment is a true and accurate copy of the Assignment of the Deed of Trust/Mortgage.

I SOLEMNLY AFFIRM UNDER THE PENALTIES OF PERJURY THAT THE CONTENTS OF THE FOREGOING PAPER ARE TRUE TO THE BEST OF MY KNOWLEDGE, INFORMATION AND BELIEF.

Date: 11/24/2015

Lauren Bush, Esq.
McCabe, Weisberg & Conway, LLC
312 Marshall Avenue, Suite 800
Laurel, MD 20707
(301) 490-3361

FILED
NOV 3 0 2015
Clerk of the Circuit Court
Montgomery County, Md.

Susan Lindauer
232 Manor Circle
14-606080

Page 1 of 1

Recording Requested By:
OCWEN LOAN SERVICING, LLC

When Recorded Return To:

OCWEN LOAN SERVICING, LLC
5720 PREMIER PARK
WEST PALM BEACH, FL  33407

## CORPORATE ASSIGNMENT OF DEED OF TRUST

Montgomery, Maryland
SELLER'S SERVICING #: ████████ "LINDAUER"
SELLER'S LENDER ID#: ████████
OLD SERVICING #: ████████

MIN #: ████████████ SIS #: 1-888-679-6377

Date of Assignment: December 1st, 2014
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC ("MERS"), SOLEY AS NOMINEE FOR AMERICAN HERITAGE LENDING CORPORATION at PO BOX 2026 FLINT MI 48501, 1901 E VOORHEES ST, STE C, DANVILLE, IL  61834
Assignee: U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR BNC MORTGAGE LOAN TRUST 2007-2 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-2 at C/O OCWEN LOAN SERVICING, LLC., 1661 WORTHINGTON ROAD, STE 100, WEST PALM BEACH, FL  33409

Executed By: SUSAN LINDAUER, AS SOLE OWNER  To: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), SOLELY AS NOMINEE FOR AMERICAN HERITAGE LENDING CORPORATION ITS SUCCESSORS AND/OR ASSIGNS
Date of Deed of Trust:  02/20/2007 Recorded:  03/06/2007  in Book/Reel/Liber: 33922 Page: 255 as Instrument No.: N/A  In the County of Montgomery, State of Maryland.

Assessor's/Tax ID No. 13-01065774

Property Address: 232 MANOR CIRCLE, TAKOMA PARK, MD  20912

Legal:  Lot numbered Three (3) in Block numbered Forty-five (45) in the subdivision known as "Carroll Manor Addition to Takoma Park", as per plat thereof duly recorded among the Land Records of Montgomery County, Maryland in Plat Book 3 at Plat No. 219.

CORPORATE ASSIGNMENT OF DEED OF TRUST Page 2 of 2

STATE OF _____**Iowa**_____

COUNTY OF ____**Black Hawk**____

On __**DEC 0 2 2014**__, before me, __**BRANDY BERNS**__
__**Black Hawk**__ in the State of _____**Iowa**_____, a Notary Public in and for
Assistant Secretary, personally known to me (or proved to me on the basis of satisfactory evidence) to be
the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on
the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the
instrument.

WITNESS my hand and official seal,

_____**BRANDY BERNS**_____
Notary Expires: 10/28/2017

**BRANDY BERNS**
COMMISSION NO.786691
MY COMMISSION EXPIRES
OCTOBER 28, 2017

(This area for notarial seal)

RECORDING REQUESTED BY:
John H. Lindauer

52014    007    Exhibit E

AND WHEN RECORDED MAIL TO:
John H. Lindauer, Trustee
JS Lindauer Trust
19286 North 107th Street
Scottsdale, AZ 85255

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## RESCISSION OF CERTIFICATE OF SATISFACTION AND REINSTATEMENT OF DEED OF TRUST

1. A deed of trust was granted by Susan Lindauer as the property owner, in favor of John H Lindauer, Trustee of the JS Lindauer Trust, which deed of trust was dated February 16, 2001 and recorded on April 10, 2001 in Liber 18991, at folio 219, Land Records of Montgomery County, Maryland, encumbering the following real property situated in said County:

Lot numbered Three (3) in Block numbered Forty-five (45) in the subdivision known as "Carroll Manor Addition to Takoma Park", as per plat thereof duly recorded among the Land Records of Montgomery County, Maryland in Plat Book 3 at Plat No. 219.

2. The undersigned executed a Certificate of Satisfaction (hereinafter the "Certificate") of said deed of trust, which Certificate was dated February 25, 2007 and recorded on March 6, 2007 among the Land Records of Montgomery County Maryland in Liber 33922, Folio 276, through the mistake and inadvertence of Ecom Title Agency, LLC as the escrow agent of refinance lender American Heritage Lending Corporation.

3. The undersigned hereby cancels and rescinds the Certificate to the same extent and effect as though the Reconveyance had never been issued and recorded.

Dated: May 3, 2016.

JS Lindauer Trust

ID#1065774

By _____ Trustee

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF Arizona    )
                    )
COUNTY OF Maricopa  ) SS.
                    )

On May 3, 2016 before me, _____Omar Elwer_____, Notary Public, personally appeared John H. Lindauer, Trustee, who proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Aizona that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____



OMAR ELWER
Notary Public · Arizona
Maricopa County
My Comm. Expires Jul 23, 2017


Exhibit E



52014   006   Exhibit F

**RECORDING REQUESTED BY:**
John H. Lindauer

**AND WHEN RECORDED MAIL TO:**
John H. Lindauer, Trustee
JS Lindauer Trust
19286 N. 107th Street
Scottsdale, Arizona 85255

_____

**SPACE ABOVE THIS LINE FOR RECORDER'S USE**

## RESCISSION OF RELEASE OF MORTGAGE
## AND REINSTATEMENT OF DEED OF TRUST

1. A deed of trust was granted by Susan Lindauer as the property owner, in favor of John H. Lindauer, Trustee of the JS Lindauer Trust, which deed of trust was dated May 28, 2002 and recorded on May 28, 2002, in Liber 33922, at folio 278, Land Records of Montgomery County, Maryland, encumbering the following real property situated in said County:

   Lot numbered Three (3) in Block numbered Forty-five (45) in the subdivision known as "Carroll Manor Addition to Takoma Park", as per plat thereof duly recorded among the Land Records of Montgomery County, Maryland in Plat Book 3 at Plat No. 219.

2. The undersigned executed a Release of Mortgage (hereinafter the "Release") of said deed of trust, which Release was dated February 25, 2007 and recorded on March 6, 2007 among the Land Records of Montgomery County Maryland in Liber 33922, Folio 278, through the mistake and inadvertence of Ecom Title Agency, LLC as the escrow agent of refinance lender American Heritage Lending Corporation.

   ID# 1065774

3. The undersigned hereby cancels and rescinds the Release to the same extent and effect as though the Reconveyance had never been issued and recorded.

Dated: May 4, 2016.

JS Lindauer Trust

By _____ Trustee



JOSHUA DAVID MARTIN
Notary Public - Arizona
Maricopa County
My Comm. Expires Sep 27, 2019

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF Arizona   )
                   ) SS.
COUNTY OF Maricopa )

On May 3, 2016 before me, ___Joshua D. Martin___, Notary Public, personally appeared John H. Lindauer, Trustee, who proved to me on the basis of satisfactory evidence, to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Aizona that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____